UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 19-cv-10094

STEPHEN BUZZELL, JR.

    Plaintiff,

v.

FLORIDA KEYS AMBULANCE SERVICE, INC.

    Defendant.     /

**COMPLAINT**

Plaintiff, STEPHEN BUZZELL, JR. ("BUZZELL"), by and through his undersigned attorney, sues Defendant, FLORIDA KEYS AMBULANCE SERVICE, INC. ("FKAS"), and alleges as follows:

**INTRODUCTION**

1. This is an action for damages, declaratory, and injunctive relief by Plaintiff against FKAS for race and national origin discrimination under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, the Florida Civil Rights Act of 1992 ("FCRA"), and 42 U.S.C. §1981 ("§1981") as well as for retaliation under Florida's Private Whistleblower Act, Florida Statute §§448.101-.104 ("FWA").

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and Title VII. The Court's supplemental jurisdiction is invoked for the Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

3. Venue properly lies in this judicial district pursuant to 28 U.S.C. §1391(b), in that the Defendant maintains offices within this judicial district and a substantial part of the events giving rise to these claims occurred in this judicial district.

## PARTIES AND EXHAUSTION OF REMEDIES

4.      BUZZELL is a Caucasian male, *sui juris,* and, at all times material to this action, was a resident of Monroe County, Florida.

5.      Defendant, FKAS, is a Florida corporation with its principal address at 91421 Overseas Highway, Tavernier, Florida 33070.

6.      BUZZELL has complied with all conditions precedent to jurisdiction under Title VII and the FCRA in that he filed his Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") within 300 days of the unfair employment practices alleged in this Complaint; BUZZELL has filed this suit within 90 days of receiving a Right to Sue notice from the EEOC; 180 days have elapsed since the Charge of Discrimination was filed with both the EEOC and the FCHR and FCHR has not issued a determination in that time period; and BUZZELL is filing this Complaint within the FCRA's four (4) year statute of limitations for the alleged discriminatory acts. Thus, all administrative prerequisites have been satisfied and this suit is timely filed. True copies of BUZZELL's Charge of Discrimination and Notice of Right to Sue are attached as Exhibits 1 and 2, respectfully.

## GENERAL ALLEGATIONS

7.      BUZZELL began his employment with FKAS in June of 2014 as an On-Call Critical Care Licensed Paramedic and was later promoted to the salaried position of Critical Care Paramedic.

8.      During BUZZELL's employment with FKAS, the Defendant's workforce of non-managerial paramedics/emergency medical technicians ("EMT") almost entirely consisted of Hispanic employees, with the exception of BUZZELL and three other workers.

9. During BUZZELL's employment with FKAS, FKAS constantly treated BUZZELL in an unfair and disparate manner due to BUZZELL's race and national origin, as demonstrated by the following examples:

A. Edward Bonilla, the owner of FKAS, repeatedly referred to BUZZELL as "Papo" and used abusive and foul language when communicating with BUZZELL. Mr. Bonilla did not use such language to communicate with FKAS's Hispanic employees.

B. In April of 2017, BUZZELL was reprimanded and ordered to stay home from work without pay as a result of requesting to switch ambulances due to the poor operation of the ambulance to which he was assigned. Other Hispanic paramedics have switched ambulances under similar circumstances without resulting in a reprimand or being ordered to stay home without pay.

C. In May of 2017, BUZZELL was required to attend unpaid training on new company equipment and was chastised by Mr. Bonilla for questioning why he was required to attend unpaid training, while some Hispanic paramedics were not similarly required to undergo this training.

D. BUZZELL was required to stay home from work without pay for declining to transport a patient in an ambulance that was believed to be unsafe for the patient and was later demoted to on-call status, which affected the amount of his compensation. Hispanic paramedics who have refused to transport patients for safety reasons were not sent home from work without pay and did not face other repercussions.

E. BUZZELL was suspended indefinitely allegedly for "switching partners and running a different call." FKAS did not permit BUZZELL to return to work thereafter, effectively terminating his employment with the company. Hispanic paramedics and EMTs who have switched partners and/or run different calls were not placed on suspension or issued other disciplinary action.

GALLUP AUERBACH • 4000 Hollywood Blvd, Suite 265 South • Hollywood, FL 33021• Tel: 954.894.3035 • Web: gallup-law.com

10. Moreover, during his employment with FKAS, BUZZELL discovered that FKAS had committed various safety violations under Florida law, including the following:

A. BUZZELL discovered and reported to Mr. Bonilla that the air conditioning systems in certain ambulances were not working properly (or at all in some cases). For instance, ambulance Unit 44 had a dryer vent fashioned to direct the airflow to the patients. Ambulance Unit CC3 leaked diesel fuel to the point that it saturated the ground where the Unit was parked at the station and, as a result, employees were directed not to fill this Unit beyond half capacity because of the leak. Due, at least in part, to the air conditioning situation, BUZZELL discovered that medications were at risk of not being stored in at the proper temperature. The air conditioning issues are believed to be in violation of Fla. Stat. §401.26, which requires vehicles to meet safety, sanitation, and maintenance standards.

B. BUZZELL discovered and reported to FKAS that Unit 21 had a cracked frame and rotten floors such that some paramedics and EMTs refused to use this ambulance. This is believed to be in violation of Fla. Stat. §401.26, which requires vehicles to meet safety, sanitation, and maintenance standards.

C. BUZZELL discovered and reported to FKAS that it failed to adequately staff its ambulances for transport in accordance with the applicable law. For instance, in March of 2017, FKAS performed an advanced life support ("ALS") ambulance transfer with only a first responder and a paramedic. This is believed to be in violation of Fla. Stat. §401.25(7)(b), which requires each ALS ambulance transfer to be staffed with two persons: "one who is a certified paramedic or licensed physician; and one who is a certified emergency medical technician, certified paramedic, or licensed physician who also meets the requirements of s. 401.281 for drivers."

D. BUZZELL discovered and reported to FKAS that it allowed two patients to be transported in the same ambulance unit at the same time, which is believed to be in violation of

Florida law which only allows for the transport of one person (patient) while attended to and driven by a qualified driver. FKAS attempted to conceal this violation by creating two records for the transport so as to make it appear as though the patients were transported in two separate ambulances.

E. BUZZELL discovered and reported to FKAS that there were multiple inter-facility ALS and BLS transports with a nurse and paramedic where the physician in charge or nurse did not order or sign off on the transport type as required by Fla. Stat. §401.252(1)(b).

F. On or about May 12, 2017, BUZZELL discovered that the ambulance in which he was assigned to transport a patient on a ventilator, on an approximately ninety (90) minute trip, did not have a backup ventilator for the patient. BUZZELL refused to take this transport out of concern for the patient's well-being in the event the ventilator the patient was on had a critical failure and BUZZELL was unfamiliar with that ventilator, and he conveyed this concern to Mr. Bonilla. Immediately thereafter, Mr. Bonilla sent BUZZELL home and then demoted BUZZELL to an on-call paramedic position. Mr. Bonilla declined to remedy the safety issues raised by BUZZELL associated with this transport and, instead, elected to personally participate in the transport of this patient.

G. BUZZELL discovered and reported to FKAS that it failed to comply with HIPPA requirements by keeping transport reports in open view to the public, thereby failing to apply appropriate administrative, technical, and physical safeguards to protect the privacy of medical records and other protected health information.

H. BUZZELL discovered and reported to FKAS that FKAS provided emergency services for a boxing match held in Miami-Dade County for which it was not properly certified or licensed as FKAS did not hold a Certificate of Public Convenience and Necessity from Miami-Dade

County, which is believed to have been required under Florida law. *See* Fla. Admin. Code R.64J-1.001; Fla. Stat. §401.25.

I. BUZZELL discovered and reported to FKAS that FKAS had engaged in the ongoing and continued practice of using a Basic Life Support ("BLS") vehicle for ALS transports, which is not permitted under Florida law. Fla. Amin. Code R. 64J-1.007.

11. Based on the aforementioned, BUZZELL possessed a good faith belief that FKAS was violating the law, and he reported these violations to Mr. Bonilla and other managers and supervisors of FKAS, including, but not limited to, Jim Faktor, Jason, Mumper, Brian Beckman, and Kevin Angelilli. FKAS, however, failed to remedy these violations. Instead, on July 6, 2017, following BUZZELL reporting these violations to the company, FKAS indefinitely suspended BUZZELL claiming this suspension was due to BUZZELL "switching partners and running a different call." It was not FKAS' practice, however, to suspend or discipline employees for such action. Indeed, Hispanic paramedics and EMTs have switched partners and/or run different calls without being suspended or issued disciplinary action.

12. After being placed on suspension, BUZZELL was never contacted by FKAS to return to work. As a result, following approximately three (3) weeks of suspension, BUZZELL contacted FKAS to inquire when he could return to work. In response, Mr. Bonilla informed BUZZELL that FKAS had no openings and he was free to look for work elsewhere, effectively terminating his employment with the company.

13. Plaintiff has satisfied all conditions precedent to bringing this action or these conditions have been waived or otherwise excused.

14. Plaintiff has retained the undersigned attorney to represent him in this action and is obligated to pay said attorney a reasonable fee for his services.

## COUNT I: VIOLATION OF FCRA (RACE DISCRIMINATION)

15. This is an action for discrimination based upon race under the FCRA.

16. Plaintiff reasserts the general allegations as set forth above in paragraphs 1-14 and incorporates these allegations herein by this reference.

17. Defendant violated the FCRA by discriminating against Plaintiff based upon his race by demoting him, suspending him, and terminating his employment with the company.

18. As a result of Defendant's violations of the FCRA, Plaintiff has been damaged.

WHEREFORE, Plaintiff, STEPHEN BUZZELL, JR., prays that this Court will:

a. Order Defendant, FLORIDA KEYS AMBULANE SERVICE, INC., to remedy the race discrimination of Plaintiff by:

   i. Paying appropriate back pay;

   ii. Paying prejudgment and post-judgment interest;

   iii. Paying front pay in lieu of reinstatement;

   iv. Paying for lost benefits including medical insurance, pension and retirement plan;

   v. Providing any other relief that is appropriate.

b. Enter an order against Defendant for compensatory damages;

c. Enter an order against Defendant for punitive damages;

d. Grant Plaintiff costs and a reasonable award of attorney's fees pursuant to Section 760.11(5), Florida Statutes.

## COUNT II: VIOLATION OF FCRA (NATIONAL ORIGIN DISCRIMINATION)

19. This is an action for discrimination based upon national origin under the FCRA.

20. Plaintiff reasserts the general allegations as set forth above in paragraphs 1-14 and incorporates these allegations herein by this reference.

GALLUP AUERBACH • 4000 Hollywood Blvd, Suite 265 South • Hollywood, FL 33021• Tel: 954.894.3035 • Web: gallup-law.com

21. Defendant violated the FCRA by discriminating against Plaintiff based upon his national origin by demoting him, suspending him, and terminating his employment with the company.

22. As a result of Defendant's violations of the FCRA, Plaintiff has been damaged.

WHEREFORE, Plaintiff, STEPHEN BUZZELL, JR., prays that this Court will:

a. Order Defendant, FLORIDA KEYS AMBULANE SERVICE, INC., to remedy the national origin discrimination of Plaintiff by:

    i. Paying appropriate back pay;

    ii. Paying prejudgment and post-judgment interest;

    iii. Paying front pay in lieu of reinstatement;

    iv. Paying for lost benefits including medical insurance, pension and retirement plan;

    v. Providing any other relief that is appropriate.

b. Enter an order against Defendant for compensatory damages;

c. Enter an order against Defendant for punitive damages;

d. Grant Plaintiff costs and a reasonable award of attorney's fees pursuant to Section 760.11(5), Florida Statutes.

### COUNT III:  VIOLATION OF TITLE VII (RACE DISCRIMINATION)

23. This is an action for discrimination based upon race under Title VII.

24. Plaintiff reasserts the general allegations as set forth above in paragraphs 1-14 and incorporates these allegations herein by this reference.

25. Defendant violated Title VII by discriminating against Plaintiff based upon his race by demoting him, suspending him, and terminating his employment with the company.

26. As a result of Defendant's violations of the Title VII, Plaintiff has been damaged.

WHEREFORE, Plaintiff, STEPHEN BUZZELL, JR., prays that this Court will:

a. Order Defendant, FLORIDA KEYS AMBULANE SERVICE, INC., to remedy the race discrimination of Plaintiff by:

    i. Paying appropriate back pay;

    ii. Paying prejudgment and post-judgment interest;

    iii. Paying front pay in lieu of reinstatement;

    iv. Paying for lost benefits including medical insurance, pension and retirement plan;

    v. Providing any other relief that is appropriate.

b. Enter an order against Defendant for compensatory damages;

c. Enter an order against Defendant for punitive damages;

d. Grant Plaintiff costs and a reasonable award of attorney's fees pursuant to Title VII.

**COUNT IV: VIOLATION OF TITLE VI (NATIONAL ORIGIN DISCRIMINATION)**

27. This is an action for discrimination based upon national origin under Title VII.

28. Plaintiff reasserts the general allegations as set forth above in paragraphs 1-14 and incorporates these allegations herein by this reference.

29. Defendant violated Title VII by discriminating against Plaintiff based upon his national origin by demoting him, suspending him, and terminating his employment with the company.

30. As a result of Defendant's violations of Title VII, Plaintiff has been damaged.

WHEREFORE, Plaintiff, STEPHEN BUZZELL, JR., prays that this Court will:

a. Order Defendant, FLORIDA KEYS AMBULANE SERVICE, INC., to remedy the national origin discrimination of Plaintiff by:

    i. Paying appropriate back pay;

    ii. Paying prejudgment and post-judgment interest;

    iii. Paying front pay in lieu of reinstatement;

9

_____
GALLUP AUERBACH • 4000 Hollywood Blvd, Suite 265 South • Hollywood, FL 33021• Tel: 954.894.3035 • Web: gallup-law.com

      iv. Paying for lost benefits including medical insurance, pension and retirement plan;

      v. Providing any other relief that is appropriate.

b. Enter an order against Defendant for compensatory damages;

c. Enter an order against Defendant for punitive damages;

e. Grant Plaintiff costs and a reasonable award of attorney's fees pursuant to Title VII.

**COUNT V: VIOLATION OF §1981 (RACE/NATIONAL ORIGIN DISCRIMINATION)**

31. This is an action for discrimination based upon race/national origin under 42 U.S.C. §1981. Defendnat deprived Plainitff of his rights of equal protection of the law against discrimination on the basis of race and national origin.

32. Plaintiff reasserts the general allegations as set forth above in paragraphs 1-14 and incorporates these allegations herein by this reference.

33. Defendant violated §1981 by intentionally and purposefully treating Plaintiff differently in the terms and conditions of his employment because of his race and national origin, including but not limited to, demoting him, suspending him, and terminating his employment with the company while not subjecting employees outside the Plaintiff's race and national origin who engaged in the same or similar conduct to such treatment.

34. Defendant's discriminatory actions had the purpose and effect of denying the Plaintiff rights in connection with his prior employment with the Defendnat that employees outside his race/national oriign are allowed to enjoy.

35. As a result of Defendant's violations of §1981, Plaintiff has been damaged.

WHEREFORE, Plaintiff, STEPHEN BUZZELL, JR., prays that this Court will:

A. Grant a permanent injunction that enjoins Defendant from engaging in any practice in violation of §1981.

B.	Order Defendant to pay any and all damages that are available to Plaintiff, including punitive damages as applicable.

C.	Grant Plaintiff his costs and an award of reasonable attorney's fees pursuant to 42 U.S.C. §1988; and

D.	Grant Plaintiff such further relief as the Court deems just and equitable, including, but not limited to, reinstatement of his employment.

**COUNT VI:  VIOLATION OF FLORIDA'S PRIVATE WHISTLEBLOWER'S ACT**

36.	Plaintiff reasserts the general allegations as set forth above in paragraphs 1-14 and incorporates these allegations herein by this reference.

37.	Florida Statute §448.102 (3) prohibits an employer from taking a retaliatory personnel action against an employee because the employee has "[o]bjected to, or refused to participate in, any activity, policy or practice of the employer, which is in violation of any law, rule or regulation."

38.	The conduct of FKAS management in demoting, indefintely suspending, and terminating BUZZELL for engaging in statutorily protected conduct within the meaning of the FWPA by objecting to the safety violations to FKAS management violates the FWPA.

39.	FKAS' demotion, suspension, and termination of BUZZELL constitutes adverse employment action and "retaliatory personnel action" under section 448.101(5) of the FWPA.

40.	BUZZELL's statutorily protected conduct under the FWPA was casually connected to FKAS' decision to demote, suspend, and terminate him because he was demoted, suspended, and terminated close in time to his protected conduct.

41.	As a result of FKAS' violation of the FWPA, BUZZELL has been damaged.

42.	Plaintiff is entitled to recover his attorney's fees under Section 448.104, Florida Statutes.

## DEMAND FOR JURY TRIAL

Plaintiff, STEPHEN BUZZELL, JR., hereby demands trial by jury on all claims triable by right of jury under state or federal law.

Dated this 10th day of June 2019

Respectfully submitted,
**GALLUP AUERBACH**
*Counsel for Plaintiff*
4000 Hollywood Boulevard
Presidential Circle-Suite 265 South
Hollywood, Florida 33021
Telephone:   (954) 894-3035
Facsimile:   (954) 894-8015
E-mail:      dgallup@gallup-law.com

By:   /s/ Dana M. Gallup
      DANA M. GALLUP
      Florida Bar No.: 0949329